UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE TAMARA CHAMBERS,

    Debtor,

THOMAS W. MCDONALD, JR.,

        Appellant,                                      Case No. 19-10421
vs.                                                              HON. MARK A. GOLDSMITH

TAMARA CHAMBERS, et al.

        Appellees.
_____/

## OPINION & ORDER
## AFFIRMING THE BANKRUPTCY COURT'S ORDER CONFIRMING DEBTOR'S CHAPTER 13 PLAN

This action is an appeal from the decision of the United States Bankruptcy Court for the Eastern District of Michigan, confirming the debtor appellees' plan under Chapter 13 to repay her debts ("Confirmation Order"). The Trustee, Thomas W. McDonald, Jr., appealed the Bankruptcy Court's decision, arguing that the bankruptcy judge erred by confirming Debtor Tamara Chambers's plan with respect to debts owed to Creditor Dort Federal Credit Union ("DFCU"). For the reasons that follow, the Bankruptcy Court's Confirmation Order is affirmed.

### I.    BACKGROUND

Chambers filed for a petition for relief under Chapter 13 of the Bankruptcy Code. Under Chapter 13, in order to qualify for court approval, a debtor must propose a debt adjustment plan that reconciles outstanding debts to creditors. Chambers has three outstanding debts to DFCU: a car loan, a $1,000 loan, and some credit card debt.

1

In her Chapter 13 plan, Chambers proposed to continue to pay DFCU directly for the car loan at the contract rate of 15%. DFCU and Chambers compromised the two other debts (Claims 4 and 5 in the plan) because Chambers took out the $1,000 loan nineteen days before filing for bankruptcy, and her credit card balance had risen to approximately $1,500 just before the filing. Confirmation Hr'g Tr., Designated Bankruptcy Record ("DBR"), at PageID.181 (Dkt. 5). Debts incurred within ninety days of a bankruptcy are potentially nondischargeable under the Bankruptcy Code. Rather than incur the attorney fees to resolve whether the $1,000 loan and the $1,500 credit card debt were nondischargeable, Chambers and DFCU compromised and agreed to a reduced amount of approximately $2,000 to resolve both claims. DBR at PageID.181-182.

The Trustee made the following objections to Chambers's plan before the bankruptcy court:

1. Trustee's Office Objects to the direct payment proposed to Dort Federal Credit Union for the reason that the contract rate of interest is not within the 'Till' guidelines.

2. The plan does not provide that all of the debtor's projected disposable income will be applied for payment under the plan contrary to 11 U.S.C. §1325(b)(1)(B). Source of additional funding is future state income tax refunds.

3. Trustee's Office objects to Section IV.Y of the plan for the reason that it is administratively burdensome, and in addition, said expense is already included as part of Schedule J.

Trustee's Obj. to Confirmation of Chapter 13 Plan, DBR at PageID.104. The Trustee does not appeal the resolution of his second and third objections.

The bankruptcy court held a confirmation hearing on December 18, 2018. The Trustee's primary concern was that DFCU was receiving better treatment than Chambers's unsecured creditors. The court overruled the Trustee's first objection, explaining that it is not clear that the Trustee had standing to challenge the 15% interest rate on the auto loan, and that even if he did, a

2

reduction under the Trustee's proposed interest rate would provide almost no additional funds to the unsecured creditors. DBR at PageID.193-194. The Trustee also initially objected to the resolution of Claims 4 and 5, but after learning that the debts had been reduced, and taking into consideration the cost to resolve potential disputes, the Trustee conceded that it "is not as much of an issue simply because in order to pay attorney fees to pick apart, you know, the statements . . . [it] may be more, may cost more in the long run." DBR at PageID.187. The bankruptcy judge agreed and overruled the Trustee's objection with respect to Claims 4 and 5. Id. at PageID.193. The judge explained that "[t]his small compromise avoids a lot of litigation and gives the debtor and as well as other creditors certainty." Id. The bankruptcy court confirmed Chambers's Chapter 13 plan. Id. The Trustee subsequently appealed the bankruptcy court's confirmation order. Trustee's Stmt. of Issues on Appeal, DBR at PageID.197.

## II. STANDARD OF REVIEW

District courts apply a de novo standard of review in bankruptcy appeals when evaluating conclusions of law. In re Cusano, 431 B.R. 726, 730 (B.A.P. 6th Cir. 2010). De novo review means that the appellate court "determines the law independently of the trial court's determination." Treinish v. Norwest Bank Minn., N.A. (In re Periandri), 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001). In contrast, the bankruptcy court's findings of fact are reviewed under the clearly erroneous standard. Cusano, 431 B.R. at 730. A finding of fact is clearly erroneous "'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" In re DSC, Ltd., 486 F.3d 940, 944 (6th Cir. 2007) (quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985)).

## III. ANALYSIS

On appeal, the Trustee argues that the Confirmation Order approving 15% interest on DFCU's secured auto loan violates the Supreme Court's decision in Till v. SCS Credit Corp., 541 U.S. 465 (2004); (2) the Confirmation Order violates Local Bankruptcy Rule 3070-1, which provides that all claims be paid by the Chapter 13 Trustee subject to some exceptions; and (3) the Confirmation Order violates 11 U.S.C. § 523(a)(2)(C). Trustee's Br. on Appeal (Dkt. 6). Both DFCU and Chambers filed response briefs (Dkts. 7, 8). No reply brief was filed. The Trustee's arguments will be taken in turn.

### A. Till v. SCS Credit Corp., 541 U.S. 465 (2004)

Under Chapter 13 of the Bankruptcy Code, to qualify for court approval, a debt adjustment plan must, among other things, accommodate each allowed, secured creditor. 11 U.S.C. § 1325(a)(5). One approved way to accommodate an allowed, secured creditor, such as DFCU, is "by providing the creditor both a lien securing the claim and a promise of future property distributions (such as deferred cash payments) whose total 'value, as of the effective date of the plan, . . . is not less than the allowed amount of such claim.'" Till v. SCS Credit Corp., 541 U.S. 465, 468-469 (2004) (quoting 11 U.S.C. § 1325(a)(5)(B)(ii)). This method is commonly known as the "cramdown option," because it may be enforced over a claim holder's objection. Id. at 469. Under the cramdown option, when courts allow installment payments to satisfy a claim, "the amount of each installment must be calibrated to ensure that, over time, the creditor receives disbursements whose total present value equals or exceeds that of the allowed claim." Id.

In Till, a plurality of the Supreme Court held that the proper way to calibrate installment payments is to calculate the "prime-plus" rate. Id. at 479. To calculate the prime-plus rate, courts start with the national prime rate and then increase the rate to account for risk of nonpayment by

4

the debtor. Id. at 478-479. The Supreme Court did not set a risk adjustment rate, but generally courts have approved adjustments of 1% to 3%. Id. at 480. The Till plurality noted that courts should "select a rate high enough to compensate the creditor for its risk but not so high as to doom the [Chapter 13] plan." Id. If a bankruptcy court "determines that the likelihood of default is so high as to necessitate an 'eye-popping' interest rate, the plan probably should not be confirmed." Id. at 480-481.

The Trustee contends that the bankruptcy court erred because the 15% rate for the installment payments made to DFCU does not comply with the Till formula. Trustee Br. at 8-9. The Trustee argues that because the prime interest rate on the date of the bankruptcy filing was 5%, the appropriate Till rate is between 6% to 8%, or "about 50% less than the 15% contract rate of interest approved by the Bankruptcy Court." Id. at 9. The Trustee's argument is flawed for three reasons.

First, the Trustee's suggestion that using the prime-plus rate results in a rate of about 50% less than the 15% contract rate is misleading. As noted by the bankruptcy court, employing the cramdown option comes at a cost. Confirmation Hr'g. Tr., DBR at PageID.188. To employ the cramdown option, payments must be made through the Trustee, instead of directly to DFCU. Id. The consequence of funneling the payments through the Trustee is that the payments would be subject to the Trustee's statutory fee of 5.5%. Id. Therefore, although the prime-plus rate may be 50% less than the 15% contract rate, in the end, the rate will not result in a 50% savings that can be disbursed to unsecured creditors, as the Trustee appears to suggest. Using the Trustee's proposed calculations, the prime-plus rate, including the Trustee's fee, would result in an effective rate between 11.5% and 13.5%.

Second, Till does not require courts to set the risk adjustment rate at 1% to 3%. The Supreme Court observed that generally rates are set in the 1% to 3% range, but the Court declined to decide the proper scale. Till, 541 U.S. at 480. The Trustee argues that "Till only mandates that the proper interest rate on secured vehicle claims is the prime rate plus 1 to 3%, nothing more, nothing less." Trustee Br. at 13. Not true. The bankruptcy court has the discretion to select the appropriate risk adjustment rate, so long as it does not result in an "eye-popping" interest rate. Till, 541 U.S. at 480. The 15% contract rate, when compared to the prime-plus rate with the Trustee's statutory fee, is not an eye-popping interest rate in this case.

Finally, the Trustee has not provided any legal support for his position that Till necessarily applies in this case. The Trustee even conceded at the confirmation hearing that he "probably can't force a debtor to cram down an interest rate." DBR at PageID.190. Indeed, the cramdown provision, 11 U.S.C. § 1325(a)(5)(B)(ii), is only one of three ways to qualify for court approval of a debt adjustment plan with respect to accommodating an allowed, secured creditor. A debtor may also qualify by surrendering the property securing the claim, 11 U.S.C. § 1325(a)(5)(B)(ii), or by obtaining the creditor's acceptance of the plan, § 1325(a)(5)(B)(i). DFCU objected to Chambers's plan, but accepted Chambers's proposal with respect to the auto loan. The Trustee has not cited any authority suggesting that DFCU's acceptance of Chambers's proposal with respect to the auto loan does not satisfy § 1325(a)(5)(B)(i), and that instead the auto loan must be "crammed down" under § 1325(a)(5)(B)(ii).

The Trustee has not identified any mistakes of law or clearly erroneous findings of fact made by the bankruptcy court with respect to approving the 15% interest rate on the auto loan. After considering all creditors' objections and receiving the advice of the Trustee, the bankruptcy judge was persuaded that Chambers would "'be able to make all payments under the plan and to

comply with the plan.'" Till v. SCS Credit Corp., 541 U.S. 465, 480 (2004) (quoting 11 U.S.C. § 1325(a)(6)). The bankruptcy court's decision to approve the 15% interest rate is affirmed.

### B. Bankruptcy Local Rule 3070-1

The Trustee argues that the Confirmation Order violates Local Bankruptcy Rule 3070-1 (requiring all claims to be paid by and through the Trustee unless debtor's plan establishes cause for remitting payments on a claim directly to the creditor), and 11 U.S.C. § 1322(b)(1) (setting forth the unfair discrimination standard for unsecured creditors). Trustee's Br. at 16-18. Appellants assert that these arguments were not presented to the bankruptcy court and have, therefore, been waived. DFCU Br. at 13; Chambers Resp. at 12-13. Appellants have the better part of the argument.

It is well-established that arguments not raised before the bankruptcy judge are waived on appeal. See, e.g., In re Bonner, 330 B.R. 880 (B.A.P. 6th Cir. 2005) (citing Hood v. Tenn. Student Assistance Corp. (In re Hood), 319 F.3d 755, 760 (6th Cir. 2003)). The Trustee did not raise any objection to the Chambers's Chapter 13 plan based on Rule 3070-1 or 11 U.S.C. § 1322(b)(1) to the bankruptcy court. Trustees Obj. to Confirmation at PageID.104; Confirmation Hr'g. Tr. at PageID.177-196. Therefore, the Trustee waived these arguments.

### C. 11 U.S.C. § 523(a)

Finally, the Trustee argues that the Confirmation Order violates 11 U.S.C. 523(a)(2)(C). Trustee Br. at 19. The relevant section provides that "consumer debts owed to a single creditor and aggregating more than $500 for luxury goods or services incurred by an individual debtor on or within 90 days before the order for relief under this title are presumed to be nondischargeable." § 523(a)(2)(C)(i)(I). The Trustee raises the issue that it is not clear whether Claims 4 and 5 were for luxury goods, and, therefore, nondischargeable. He points out that based on the limited

7

information available, at least some of the purchases were for necessities, such as gasoline, food, and possibly college tuition. Trustee Br. at 20.[1] DCFU argues that § 523(a)(2) cannot be violated in the way the Trustee is proposing. DCFU Br. at 17. DFCU is correct.

Determining whether a debt is dischargeable must be resolved in an adverse proceeding initiated under Federal Bankruptcy Rule 7001(6). 11 U.S.C. § 523(c)(1). No party filed an adverse proceeding to determine the dischargeability of the debts owed to DFCU, and it would have been inappropriate to make such a determination at the confirmation hearing, see In re Luckman, No. 12-60036-13, 2012 WL 6708586, at *8 (Bankr. D. Mont. Dec. 26, 2012) ("To attempt to determine dischargeability of debt in confirmation of a chapter 13 plan would violate Rule 7001(6)."). Therefore, the bankruptcy court correctly overruled the Trustee's objection.

## IV. CONCLUSION

For the reasons stated above, the Bankruptcy Court's order confirming Chambers's Chapter 13 plan is affirmed.

SO ORDERED.

Dated: February 26, 2020  
      Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

---

[1] The Trustee also asserts that the bankruptcy court denied his request for discovery into these issues during the confirmation hearing. Trustee Br. at 19. The Trustee is mistaken. There was no mention of discovery into these matters, or any other matter, during the confirmation hearing.